IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES FOURNIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-862-SMD |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION & ORDER**

In April 2018, Plaintiff Charles Fournier ("Fournier") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI. He alleged disability beginning June 21, 2014. At his hearing before the Administrative Law Judge ("ALJ"), Fournier amended his alleged onset date to June 7, 2017. Fournier's application was denied at the initial administrative level, and he received an unfavorable decision from the ALJ. Fournier then appealed the ALJ's decision to the Social Security Appeals Council, which denied his request for review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Fournier now appeals that decision under 42 U.S.C. § 405(g).[2] For the reasons that follow, the undersigned REVERESES the

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action under Federal Rule of Civil Procedure 25(d)(1).

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate

Commissioner's decision and REMANDS the case for further review.

I.     **STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the national economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 11); *Def.'s Consent* (Doc. 12).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.\* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings.

---

[4] The Medical Vocational Guidelines, known as the Grids, allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

*Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[6]

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.   ADMINISTRATIVE PROCEEDINGS

Fournier, who was thirty-two years old at the time of the ALJ's decision, has a certificate of attendance for completing twelfth grade in high school, and has past work experience as a stocker. Tr. 22, 35-41. He alleged disability due to learning disabilities, bipolar, depression, anxiety, shoulder problems, border line intellectual functioning, and stomach pain and vomiting. Tr. 45-46, 240, 273.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for his disability determination. At step one, the ALJ found that Fournier has not engaged in substantial gainful activity since his alleged onset date. Tr. 18. At step two, the ALJ found that Fournier suffers from the following severe

---

[6] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

impairments: "disorder of the left shoulder, depressive disorder, general anxiety disorder, and borderline intellectual functioning[.]" Tr. 18. At step three, the ALJ found that Fournier "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 18.

The ALJ proceeded to determine Fournier's RFC, articulating it as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. He can occasionally reach overhead with the left arm. He must avoid unprotected heights. The claimant can understand, remember, and carryout simple instructions and perform simple, routine, and repetitive tasks. He can maintain attention and perform on task for two-hour periods throughout an eight-hour workday. He can occasionally interact with supervisors and coworkers, but never with the general public. He can adapt to simple, infrequent, and gradually introduced changes.

Tr. 20. At step four, the ALJ utilized the testimony of a VE and determined that Fournier is "unable to perform any past relevant work[.]" Tr. 22. At step five, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 22. These jobs include: "inspector," "folder," and "sorter." Tr. 23. Accordingly, the ALJ determined that Fournier had not been under a disability from June 7, 2017, through the date of his decision. Tr. 23.

## IV. ANALYSIS

Fournier argues that (1) the ALJ failed to find that his cyclical vomiting was a severe impairment and (2) the ALJ's RFC determination is not based on substantial evidence. Pl.'s

5

Br. (Doc. 19) p. 1. For the reasons explained below, the undersigned remands this matter to the Commissioner for further evaluation of Fournier's RFC.

### A. To the extent the ALJ erred in not finding that Fournier's cyclical vomiting is a severe impairment, that error is harmless.

Fournier argues that the ALJ's determination that his cyclical vomiting is not a severe impairment is not supported by substantial evidence. *Id.* at 9. He asserts that record evidence confirms that his cyclical vomiting would be expected to interfere with his ability to work. *Id.* at 10.

At step two of the sequential evaluation process, "the ALJ must consider the medical severity of the claimant's impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019) (internal quotations omitted) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4)(ii). "This step is a threshold inquiry and allows only claims based on the most trivial impairments to be rejected." *Id.* at 1265 (internal quotations omitted) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *See also Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (explaining that step two in the evaluation process acts as a filter). In other words, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to proceed with the rest of the five-step analysis." *Id.* (internal quotations omitted) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Thus, if the ALJ finds a severe impairment and proceeds to step three of the process, any failure

to find a claimant's other conditions to be severe impairments is considered harmless error. *Id.* at 492-93 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, to the extent the ALJ erred in his determination that Fournier's cyclical vomiting is not a severe impairment, that error is harmless. At step two, the ALJ found that Fournier had severe impairments consisting of "disorder of the left shoulder, depressive disorder, general anxiety disorder, and borderline intellectual functioning." Tr. 18. Because the ALJ found Fournier suffered from other severe impairments, the evaluation process continued to step three regardless of the ALJ's determination that Fournier's cyclical vomiting is not a severe impairment. Therefore, because a finding of cyclical vomiting as a severe impairment would not have impacted the process at step two, the undersigned concludes that any failure to properly consider Fournier's cyclical vomiting a severe impairment is harmless error.

### B. The ALJ's RFC determination is not supported by substantial evidence.

Next, Fournier argues that the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Br. (Doc. 19) p. 12. Fournier avers that, because the ALJ did not address his cyclical vomiting in steps four and five of the sequential evaluation process, his case should be remanded "for further consideration of [his] severe impairments . . . and what affect the impairments have on the [RFC] assessment." *Id.* at 10. He asserts that, "although the ALJ stated he 'considered all symptoms' when assessing [his] RFC, the content of his decision demonstrates that he did not." *Id.* at 12. Particularly, Fournier contends that his RFC "does not consider the known symptoms of [his] cyclical vomiting,

such as his frequent vomiting, for which he would need unscheduled work breaks, and the possibility that his condition may cause him to miss work when he has a flare up." *Id.*

The RFC assessment is an assessment of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite his impairments. *Beech v. Apfel*, 100 F. Supp. 1323, 1330 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to the RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Schink*, 935 F.3d at 1268-69 (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)). Even if an ALJ states that he has "considered all symptoms," his RFC determination is not supported by substantial evidence if his decision demonstrates that he did not. *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064-65 (11th Cir. 2021).

Here, the ALJ failed to properly consider Fournier's cyclical vomiting when making his RFC determination. Although it is harmless error to not consider Fournier's cyclical vomiting a severe impairment (*see* Sec. IV(A), *supra*), failing to consider it during his RFC

8

determination is not. During his step two analysis, the ALJ acknowledges that Fournier's cyclical vomiting constitutes a physical impairment. Tr. 18. Because the Eleventh Circuit requires an ALJ to consider severe and non-severe impairments during an RFC determination, the ALJ was required to consider Fournier's cyclical vomiting during his RFC determination. Although the ALJ states that he considered all symptoms during his RFC determination (*see* Tr. 20), it is not clear from his opinion that he did. Indeed, the section of the opinion addressing Fournier's RFC does not mention cyclical vomiting. *See* Tr. 20-22. Although the ALJ does not have to consider every piece of evidence, his opinion must show that he considered Fournier's condition as a whole. Given the alleged frequency with which Fournier deals with cyclical vomiting,[7] it is necessary for the ALJ to consider how that impairment impacts Fournier's ability to work. Therefore, because it does not appear that the ALJ considered all of Fournier's severe and non-severe impairments, his RFC determination is not supported by substantial evidence. As such, this case is reversed and remanded for further consideration of Fournier's RFC.

---

[7] The evidence shows that Fournier experiences intense nausea, dizziness, and vomiting four to five times a week. Tr. 45. He states that it has been severe enough at times that he was required to visit the emergency room and receive fluids. Tr. 45.

## V.  CONCLUSION

Accordingly, it is

ORDERED that the decision of the Commissioner is REVERESED and REMANDED for further considerations in accordance with this opinion. A separate judgment will issue.

DONE this 23rd day of June, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE